ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **KATHERIN ROMÁN**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br><br>V.<br><br><br>**DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202500533** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN**<br><br>Caso Núm.<br>**BY2024CV07148 (505)**<br><br>Sobre:<br>Ley de Transparencia y Procedimiento Expedito para Acceso de la Información Pública (Ley Núm. 141-2019) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.[1]

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 26 de febrero de 2026.

Comparece ante este Tribunal de Apelaciones, el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR** (**DACO**) mediante *Certiorari* instado el 15 de mayo de 2025. En su recurso, nos solicita que revisemos la *Resolución y Orden* pronunciada el 28 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón.[2] Mediante la aludida decisión, se le requirió a **DACO** "producir y enviar a la [señora **KATHERIN ROMÁN**] las capturas de las pantallas previamente enviadas, de forma completa, incluyendo el renglón que indica "creado por" y "modificado por", a tenor con el Art. 2 de la Ley 141 de 1 de agosto de 2019".[3]

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025, sobre *Designación de Paneles en el Tribunal de Apelaciones*.
[2] Dicho dictamen judicial fue notificado y archivado en autos el 31 de marzo de 2025. Apéndice del *Certiorari*, págs. 2-4.
[3] Conocida como la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 2 de diciembre de 2024, la señora **KATHERIN ROMÁN** (señora **ROMÁN**) interpuso, por derecho propio, un *Recurso Especial de Acceso a Información Pública* al amparo de la Ley 141-2019.[4] En dicha reclamación, argumentó que el 21 y el 22 de octubre de 2024, requirió acceso a las regrabaciones de las audiencias y la reproducción de documentos públicos de ciertos casos. Pormenorizó que **DACO** le permitió acceso a los escritos procurados, excepto de los siguientes casos: RFPAP-2022-54177-6 y RFPAP-2022-56507-6, por no haber encontrado el expediente físico, por lo que, le brindarían una certificación. Por consiguiente, pidió copia digital del sistema SIAC, portal digital de **DACO**, de los dos (2) casos; y comentó que dicho plazo venció sin que se proveyera lo exigido.[5]

El 20 de diciembre de 2024, **DACO** presentó *Moción en Cumplimiento de Orden*, la cual estuvo unida de la producción de ciertas documentaciones.[6] **DACO** arguyó que no fue emplazado en conformidad con la Regla 4.4 de las de Procedimiento Civil de 2009. Enfatizó que jamás se ha negado a dar acceso, fotocopiar o digitalizar ninguno de los expedientes administrativos; los datos suplicados que no ha obtenido la señora **ROMÁN** se deben a su incomparecencia a las citas previamente pautadas o porque el expediente no ha podido ser localizado.

A continuación, el foro primario pautó audiencia para el 7 de enero de 2025. En la mencionada audiencia, se le encomendó a **DACO** proveer copia

---

[4] Apéndice del *Certiorari*, págs. 13-28.

[5] El 7 de noviembre de 2024, **DACO** proveyó cierta documentación, pero al parecer estaba incompleta, pues faltaba información sobre el registro de visitantes.

[6] Apéndice del *Certiorari*, págs. 29-42. Los documentos anejados son: (1) Registro de Visitantes 24 de octubre de 2024; (2) Certificación de los casos RFPAP-2022-56507 y RFPAP-2022-54177 de 1ro de noviembre de 2024; (3) Multa Administrativa del caso RFPAP-2022-54177-6; (4) Notificación de Multa en el caso RFPAP-2022-54177-6; (5) Multa Administrativa del caso RFPAP-2022-56507-6; y (6) Notificación de Multa en el caso RFPAP-2022-56507-6.

de varios pliegos, hojas de registros y expedientes.[7] Al día siguiente, el 8 de enero de 2025, **DACO**, mediante escrito intitulado *Moción en Cumplimiento de la Orden del 7 de enero de 2025* reprodujo nuevamente los documentos o anejos de su moción anterior e informó que el Comité remitiría los escritos al correo electrónico de la señora **ROMÁN**. Aseveró que la señora **ROMÁN** debía pasar a recoger el USB conteniendo las grabaciones de las audiencias pedidas en la Oficina Regional de Ponce.[8]

El 21 de febrero de 2025, la señora **ROMÁN** presentó *Moción Solicitando Orden e Imposición de Sanciones Económicas*.[9] Exteriorizó, entre otras cosas, que la mayoría de los autos entregados estaban ilegibles y no estaban completos, toda vez que faltaba información que fue modificada para que no se viera la imagen completa. Al día siguiente, se formuló *Orden* en la cual se confirió un período de cinco (5) días para entregar los papeles ilegibles, en formato de foto a color, y para que los incluyeran como anejos en el expediente judicial a fin de poder corroborar su cumplimiento.[10] El 4 de marzo de 2025, **DACO** presentó *Moci[ó]n Informando Cumplimiento con Orden del 9 y 22 de febrero de 2025 y R[é]plica a Moci[ó]n Solicitando Imposici[ó]n de Sanciones Econ[ó]micas* anexando todo lo reivindicado en la *Orden* prescrita el 22 de febrero de 2025.[11] Reseñó que su deber bajo la Ley

---

[7] Apéndice del *Certiorari*, págs. 43-45. Acerca de la Región de Ponce, se impuso proveer la resolución del caso PON-2017-0000263; copia digitalizada del expediente en el sistema junto con la certificación del caso PON-2019-0001687; y la Hoja de Registro de 24 de octubre de 2024, junto a una certificación de que es la única hoja de registro. Respecto a la Región de Mayagüez, se dispuso la entrega de lo que obra en el expediente electrónico del caso MAY-2023-0004863. Finalmente, en cuanto a la Región de San Juan, se exhortó la presentación de la copia del expediente digital de los casos RFPAP-2022-54177-6 y RFPAP-2022-56507-6 con certificación de que es lo único en el expediente; y al Comité de Transparencia suministrar el número de solicitud de todas las solicitudes presentadas durante el 2024 por la señora **ROMÁN**.

[8] Apéndice del *Certiorari*, págs. 46-56.

[9] *Íd*., págs. 57-84.

[10] *Íd*., págs. 85-87.

[11] *Íd*., págs. 88-138. Se unió lo siguiente: captura de pantalla de SIAC PON-2019-0001687; Contestación a Querella cuya fecha de presentación es 10 de mayo de 2019 del caso PON-2019-0001687; Moción (Título OT-4187238) con fecha de presentación 26 de enero de 2021 PON-2019-0001687; Moción (OT-2842964 presentada el 26 de enero de 2021 de SIAC surge duplicado con OT-4187238; Minuta de la vista de 7 de enero de 2025; Listado de Solicitudes de Información del año 2024; Capturas de Pantallas (a) Captura de Pantalla del PON-2017-0000263; Captura de Pantalla General PON-2017-0000263 pág. 1 y Captura de Pantalla General pág. 2; Captura de Pantalla de Mociones PON-2017-0000263 pág. 1 y Captura de Pantalla de SIAC pág. 2; Moción Asumiendo Representación Legal de 26 de mayo de 2017 PON-2017-0000263; Captura de Pantalla de Órdenes de SIAC PON-2017-0000263; Captura de Pantallas de Resoluciones de SIAC PON-2017-0000263; Captura de Pantalla de

Núm. 141 es proveer acceso a los datos en manos del Gobierno, y nunca se han negado a ello.

Inconforme, el 11 de marzo de 2025, la señora **ROMÁN** presentó *Moción Solicitando Desacato y Reiterando Solicitud de Imposición de Sanciones Económicas*.[12] En esencia, recalcó la inobservancia de **DACO** para con las órdenes del foro de instancia, actuando así de manera temeraria, frívola, negligente y de mala fe. A su entender, las capturas de pantallas ofrecidas por **DACO** no contienen la información completa, ya que no incluye el *"Creado por…"* y *"Modificado por…"* de los empleados del sistema SIAC. El 25 de marzo de 2025, **DACO** presentó su *R[é]plica-Moci[ó]n Solicitando Desacato y D[ú]plica-Solicitud de Imposici[ó]n de Sanciones Econ[ó]micas* pidiendo, en particular, que se diera por cumplida la *Orden* dispuesta el 22 de febrero de 2025 toda vez que había cumplido con la entrega de lo requerido.[13]

Cónsono con ello, el 28 de marzo de 2025, se dictaminó la *Resolución y Orden* recurrida. Del mismo modo, se declaró no ha lugar los petitorios de desacato e imposición de sanción presentados por la señora **ROMÁN.** Al mismo tiempo, concertó que, en un intervalo de diez (10) días, **DACO** produjera y enviara:

- las capturas de las pantallas previamente enviadas, de forma completa, incluyendo el renglón que indica "creado por" y "modificado por", a tenor con el Artículo 2 de la Ley Núm. 141-2019.
- las capturas arriba mencionadas sean enviadas a la recurrente en formato de foto.

---

Documentos de SIAC PON-2017-0000263 pág. 1 y Captura de Pantalla PON-2017-0000263 pág. 2; Enmienda a Querella de 16 de junio de 2017; Orden de Compra de 22 de agosto de 2015; Contestación a Querella de 26 de mayo de 2017 págs. 1, 2 y 3; Certificación de 7 de enero de 2025 PON-2017-0000263; y Certificación de 7 de enero de 2025 PON-2019-0001687. **DACO** aclaró que las licenciadas Mónica Figueroa Ramos y Teresita M. Santoni Gordon laboran en la División de Litigios de **DACO** en San Juan, y el licenciado Ferdinand Ocasio Vélez se unió a la representación legal de **DACO** para realizar una colaboración profesional conjunta. Por lo que, todos estaban autorizados a representar **DACO**.

[12] Apéndice del *Certiorari*, págs. 139-162.

[13] Apéndice del *Certiorari*, págs. 163-173.

En desacuerdo, el 8 de abril de 2025, **DACO** presentó una *Solicitud de Reconsideración*.[14] Al poco tiempo, el 15 de abril de 2025, mediante *Resolución* se declaró no ha lugar dicho pedido.[15]

Aun insatisfecho, el 15 de mayo de 2025, **DACO** recurrió ante este foro revisor intermedio señalando el(los) siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia al ordenar al DACo a producir documentos que no fueron solicitados por la Recurrente/Recurrida en su petición de información al amparo de la Ley 141-2019.

> Erró el Tribunal de Primera Instancia al ordenar al DACo a producir documentos y/o información que no es "información pública["] para fines de la Ley 141-2019.

El 27 de mayo de 2025, prescribimos *Resolución* concediendo un período perentorio de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado a la señora **ROMÁN**. El mismo día, la señora **ROMÁN**, sin someterse a la jurisdicción de este Tribunal, presentó *Solicitud de Desestimación*. Expuso que **DACO** no ha proseguido con diligencia o de buena fe; el recurso es frívolo y claramente se presentó para dilatar los procedimientos judiciales. Igualmente, aseguró que no cumplió con la Regla 47 de las de Procedimiento Civil de 2009 al no notificarle simultáneamente su solicitación de reconsideración.

El 30 de mayo de 2025, intimamos una *Resolución* confiriendo un término de diez (10) días para exponer posición en relación con la súplica de desestimación presentada por la señora **ROMÁN**. En cumplimiento con lo ordenado, el 12 de junio de 2025, **DACO** presentó su *Oposición a Solicitud de Desestimación*. Dada las circunstancias, el 16 de junio de 2025, declaramos no ha lugar el ruego de desestimación presentada por la señora **ROMÁN**. Entonces, el 3 de julio de 2025, la señora **ROMÁN** presentó su *Oposición a la Expedición de Certiorari*.

---

[14] *Íd.*, págs. 5-10.
[15] *Íd.*, págs. 11-12.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[16] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[17]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[18] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[19]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[20] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[21] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;

---

[16] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[17] *Íd.*
[18] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[19] *Íd.*
[20] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[21] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

(3) en casos de anotaciones de rebeldía;
(4) en casos de relaciones de familia;
(5) en casos revestidos de interés público; o
(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[22]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[23]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[24] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[25]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[26] En otras palabras, los anteriores criterios

---

[22] *Torres González v. Zaragoza Meléndez, supra; McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[23] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra.*
[24] *Íd.*
[25] Véase la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR ____ (2025); *Torres González v. Zaragoza Meléndez, supra; Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[26] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[27] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[28] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[29]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[30] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[31]

### - B – *LEY 141 DE 1 DE AGOSTO DE 2019*

El acceso a la información pública ha sido reconocido en nuestro ordenamiento jurídico como un derecho constitucional de rango fundamental, el cual está estrechamente vinculado a los derechos de libertad, prensa y asociación.[32] Tal derecho permite a la ciudadanía examinar el contenido de los expedientes, informes y documentos que se recopilan en la gestión del Gobierno y que constan en las agencias del Estado.[33] La importancia radica en la noción de que el conocimiento de las diligencias públicas facilitan la libre discusión de los asuntos gubernamentales y, por ende, el ejercicio de la libre expresión.[34]

---

[27] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[28] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[29] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*

[30] *García v. Asociación*, 165 DPR 311, 322 (2005).

[31] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[32] *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 207 (2021).

[33] *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161, 175 (2000).

[34] *Kilómetro 0 v. Pesquera López et al., supra*, citando a *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 590 (2007).

El *derecho de acceso a la información pública* se activa una vez la información solicitada por una persona, en efecto, es pública.[35] A tales efectos, el Artículo 3(b) de la Ley Núm. 5 de 8 de diciembre de 1955, según enmendada, conocida como la *Ley de Administración de Documentos Públicos de Puerto Rico*, sobre *documento público* instaura:

> [e]s todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico **de acuerdo con la ley o en relación con el manejo de los asuntos públicos** y que de conformidad con lo dispuesto en el Artículo 4 de esta ley (3 L.P.R.A. § 1002) se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.[36]

Por otro lado, en su Artículo 3 (a), se define *Documento* "la palabra que comprenderá todo papel, libro, folleto, fotografía, película, microforma, cinta magnetofónica, mapa, dibujo, plano, cinta magnética, disco, vídeo cinta o cualquier otro material leído por máquina y cualquier otro material informativo sin importar su forma o características físicas. **Incluye también los generados de forma electrónica, aunque nunca sean impresos en papel u otro medio distinto al creado originalmente**. El material bibliográfico, o de museo, adquirido para propósitos de exposición, consulta u otros relacionados y las publicaciones no están incluidos en la definición de la palabra documento".

Para sistematizar el procedimiento para gestionar información pública, se creó la Ley Núm. 141 de 1 de agosto de 2019, según enmendada, conocida como la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*. Ello con el propósito de dar cumplimiento

---

[35] *Engineering Services v. AEE*, 205 DPR 136, 147 (2020).

[36] Esta Ley fue derogada y sustituida por la Ley Núm. 107 de 10 de agosto de 2025 conocida como la *Ley de Administración y Conservación de Documentos Públicos para el Siglo XXI*. En su Artículo 3 (p) expresa: Documento público. — Se refiere a todo documento que se origina, conserve o reciba en cualquier dependencia del Gobierno de acuerdo con la ley o en relación con el manejo de los asuntos públicos, incluyendo las publicaciones generadas por las dependencias gubernamentales, y que se tenga que conservar permanente o temporalmente como prueba de las transacciones por su utilidad administrativa, valor legal, fiscal, cultural o informativo, según sea el caso, o que se vaya a destruir por no tener valor permanente ni utilidad administrativa, legal, fiscal, cultural o informativa. Incluye aquellos producidos de forma electrónica o digital que cumplan con los requisitos establecidos por las leyes y reglamentos.

al compromiso de garantizar y promover la transparencia en la gestión gubernamental y regular el derecho fundamental de acceso a la información pública; fomentar una política proactiva sobre rendición de cuentas a la ciudadanía; desalentar los actos de corrupción o antiéticos y promover la participación ciudadana en instituir normas y principios claros, ágiles y económicos para el ejercicio pleno del derecho de acceso a la información pública.

El Artículo 6 de la Ley cimenta el procedimiento para presentar la petitoria de información pública:

> **Cualquier persona podrá solicitar información pública mediante solicitud escrita o por vía electrónica, sin necesidad de acreditar algún interés particular o jurídico.** El Oficial de Información tendrá la responsabilidad de notificar, por email, fax o correo regular, a todo peticionario de información o documentación pública que su solicitud fue recibida y el número de identificación de la misma.
> La solicitud de información deberá incluir al menos una dirección o correo electrónico para recibir notificaciones, el formato en que desea recibir la información y una descripción de la información que solicita.[37]

Una vez la persona gestione, por escrito o electrónicamente, información al amparo de esta Ley, los Oficiales de Información de la entidad gubernamental correspondiente, deberán, en un término no mayor de diez (10) días laborables, reproducir la misma.[38] Si la diligencia "se hace directamente a nivel de una Oficina regional de la agencia o entidad gubernamental el término para entregar la información no podrá ser mayor de quince (15) días laborables". Dichos términos comenzarán a "decursar a partir de la fecha en que el solicitante haya enviado su solicitud de información a la entidad gubernamental, según conste en el correo electrónico, el matasellos del correo postal o el recibo de facsímil. Si la entidad gubernamental no contesta dentro del término establecido, se

---

[37] 3 LPRA § 9916.
[38] 3 LPRA §. 9917.

entenderá que ha denegado la solicitud y el solicitante podrá recurrir al Tribunal". [39]

Más aún, el Artículo 9 de la Ley Núm. 141 prescribe el *recurso especial de revisión judicial* ante el tribunal de primera instancia cuando una agencia o entidad gubernamental no contesta una reclamación de información pública. En lo pertinente, el artículo especifica:

> Cualquier persona a la cual una entidad gubernamental le haya notificado su determinación de **no entregar la información solicitada o que no haya hecho entrega de la información dentro del término establecido o su prórroga**, tendrá derecho a presentar, por derecho propio o a través de su representación legal, ante la sala del Tribunal de Primera Instancia de la Región Judicial donde reside, un Recurso Especial de Acceso a Información Pública.
> [...]
> El recurso en cuestión deberá presentarse dentro del término de cumplimiento estricto de treinta (30) días, contados a partir de la fecha en que la entidad gubernamental haya notificado su determinación de no entregar la información solicitada o de la fecha en que venció el término disponible para ello si no hubo contestación.
> La entidad gubernamental notificada con un recurso bajo esta Ley, vendrá obligada a comparecer por medio de su escrito, en un término de diez (10) días laborables, salvo justa causa en cuyo caso no podrá ser un término menor a cinco (5) días laborables, contados a partir de la fecha de la notificación emitida a tales efectos por el Secretario del Tribunal de Primera Instancia. El Tribunal ostentará discreción para acortar el término de diez (10) días establecido siempre que entienda que existe justa causa para así hacerlo en protección de los intereses del solicitante.
> El Tribunal tendrá que celebrar una vista dentro del término de tres (3) días laborables de recibir la contestación de la entidad gubernamental de entender que las circunstancias particulares del caso y de la información solicitada así lo requieren.
> [...][40]

De esta forma, se ha erigido como política pública del Gobierno de Puerto Rico que toda información y documentación que produce la gestión gubernamental se presume pública y accesible a todas las personas por igual.[41] Cabe señalar, además, que el propio estatuto apresta que su interpretación sea "en la forma más liberal y beneficiosa para la persona solicitante de información pública".[42]

---

[39] *Íd*.
[40] 3 LPRA § 9919.
[41] 3 LPRA § 9913.
[42] 3 LPRA § 9922.

A pesar de la naturaleza fundamental del *derecho de acceso a la información pública*, también se ha reconocido que el derecho no es absoluto y debe ceder en casos de imperativo interés público.[43] Nuestro más Alto Foro ha expresado que este derecho puede ser limitado por el Estado si existe un interés apremiante que lo justifique.[44] A tenor con lo anterior, para que el Estado pueda – válidamente – reclamar la confidencialidad de documentos o información, deberá demostrar precisa e inequívocamente la aplicabilidad de alguna de las siguientes excepciones: (1) una ley así lo declara; (2) la comunicación está protegida por algún privilegio evidenciario; (3) la divulgación de la información puede lesionar derechos fundamentales de terceros; (4) se trate de un confidente, según la Regla 515 de Evidencia de 2009, 32 LPRA Ap. VI, o (5) sea información oficial conforme a la Regla 514 de Evidencia de 2009, 32 LPRA Ap. VI.[45]

- III -

En el presente caso, **DACO** infiere que erró el tribunal primario al emitir la *Resolución y Orden* impugnada, toda vez que asegura que cumplieron con la información solicitada por la señora **Román**, y tal diligencia no incluía las capturas de pantallas que fueron ordenadas a reproducirse. Además, particularizó que las capturas de pantallas fueron provistas para facilitar la revisión de la existencia de documentos que obraban en los expedientes precisados por la señora **Román**, y no para proveer información o documentos que no son públicos, como lo es el *"creado por"* o *"modificado por"*. Agregó que la información de quien prepara la información en el sistema SIAC es interna que solo está disponible para los empleados de **DACO** que acceden al referido sistema; y esta no guarda relación ni tiene valor alguno para la petición de información y/o

---

[43] *López Vives v. Policía de P.R.,* 118 DPR 219, 228-229 (1987); *Soto v. Srio. de Justicia,* 112 DPR 477 (1982).
[44] *López Vives v. Policía de P.R., supra,* pág. 229.
[45] *Kilómetro o v. Pesquera López et al, Inc., supra,* a la pág. 210, citando a *Santiago v. Bobb y El Mundo, Inc.,* 117 DPR 153, 159 (1986).

documentos objeto de esta causa de acción. Para fundamentar su posición, **DACo** invocó la Ley Núm. 122 de 1 de agosto de 2019, en su Artículo 4, sobre la declaración de política pública y sus excepciones, la cual incluye que las comunicaciones internas entre dependencias son una excepción a la divulgación de datos públicos.[46]

Por su parte, la señora **ROMÁN** señaló que **DACo** cumplió con las órdenes del tribunal, entregando parte de la documentación. Pero, le fue proporcionada de manera ilegible. Aun así, al entregar dicha documentación, manifestó que **DACo** reconoció que son públicos y, por tanto, corresponde la entrega los mismos de manera que se puedan evaluar en su totalidad, incluyendo quien los creó y modificó. Veamos.

Del expediente ante nuestra consideración surge que el 8 de enero de 2025, **DACo** entregó la documentación requerida de los expedientes RFPAP-2022-54177-6 y RFPAP-2022-5607-6 cumpliendo así con las órdenes del foro de instancia.[47] Posteriormente, por estar ilegibles los documentos, le fue impuesto a **DACo** presentarlos nuevamente de manera tal que se pudieran leer. Precisamente, el 22 de enero de 2025 y el 18 de febrero de 2025, **DACo** proveyó las capturas de pantallas legibles y la información intimada.[48]

Luego, el 4 de marzo de 2025, **DACo** presentó *Moci[ó]n Informando Cumplimiento con Orden del 9 y 22 de febrero de 2025 y R[é]plica a Moci[ó]n Solicitando Imposici[ó]n de Sanciones Econ[ó]micas* con la cual adjuntó cierta

---

[46] 3 LPRA § 9894.

[47] La documentación anejada por **DACo** en la moción del 8 de enero de 2025, consiste en: (1) Registro de Visitantes del 24 de octubre de 2024; (2) Certificación de los expedientes RFPAP-2022-56507 y RFPAP-2022-54177; (3) Capturas de Pantalla de los casos RFPAP-2022-54177-6; (4) Notificación de Multa del caso RFPAP-2022-54177-6; y (5) Captura de Pantalla del caso RFPAP-2022-56507; (6) Notificación de Multa del caso RFPAP-2022-56507.

[48] La documentación anejada por **DACo** en la moción del 22 de enero de 2025 consiste en: (1) Reproducción de Pantalla SIAC del caso RFPAP-2022-54177-6; y (2) Reproducción de Pantalla SIAC del caso RFPAP-2022-56507. La documentación anejada por DACo en la moción del 18 de febrero de 2025 consiste en: (1) Certificación PON-2017-0000263 y PON-2019-0001687 (SIAC); (2) Documentación del caso PON-2019-0001687: Capturas de Pantallas de la Contestación a la Querella y Moción, Contestación a Querella del 12 de agosto de 2019 y Moción Informativa y Solicitud de Renuncia de Representación Legal del 21 de enero de 2019; (3) Documentación del caso PON-2017-0000263: Capturas de Pantallas; Pantalla General de SIAC; Captura de Pantalla de varias mociones, informes, enmiendas y ordenes; y (4) Registro de Solicitudes de Información 2024 Katherin Román bajo la firma de sus 3 miembros.

documentación adicional, incluyendo las capturas de pantallas a color, y explicó que dichas capturas que alegó la señora ROMÁN como ilegibles, las incluyó DACo de forma voluntaria para ilustrar e identificar de manera visual las "pestañas" de donde surgen los documentos que sí forman parte de la *Orden* de 9 de febrero de 2025. Reiteró que dio cumplimiento a todas las órdenes del Tribunal, entregando todo lo relacionado a lo que inicialmente se había intimado, detallando caso por caso y moción por moción.

Discernimos que la información concerniente a quien creó o modificó los documentos que forman parte de un expediente digital, no se incluye como información pública que la Ley provee a ser divulgada como parte de una solicitud de información de lo que una agencia o entidad gubernamental posee en sus archivos físicos o electrónicos.

De la prueba documental presentada por las partes, es preciso concluir que DACo, en efecto, cumplió con proveer toda la información requerida en la solicitud de información presentada el 2 de diciembre de 2024 ante el foro de instancia. Inclusive, DACo estuvo disponible para ofrecer la información a la señora ROMÁN tanto de manera física como por correo electrónico. En fin, toda vez que la información relacionada al "*creado por*" o "*modificado por*" no comprende información rutinaria o del curso común de las operaciones de DACo, no corresponde que dicha información sea provista a la señora ROMÁN. Por lo tanto, DACo debe limitarse a proveer solo la información requerida (capturas de pantalla legibles) de manera que puedan ser leídas e interpretadas detalladamente.

- IV -

Por los fundamentos antes expuestos, *expedimos* el auto de *Certiorari* entablado el 15 de mayo de 2025 por DACo; y, *modificamos* el decreto revisado a los efectos de **eliminar** que DACo provea "las capturas de las pantallas previamente enviadas, de forma completa, incluyendo el renglón que indica "creado por" y "modificado por", a tenor con el Artículo 2 de la Ley

Núm. 141-2019" y "las capturas arriba mencionadas sean enviadas a la recurrente en formato de foto".[49] Así modificada, ***confirmamos*** la *Resolución y Orden* proferida el 28 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado y hace constar las siguientes expresiones: "En atención a las particularidades que presenta el caso, entiendo se debió disponer del recurso con mayor celeridad".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[49] La *Resolución y Orden* objetada dio por cumplida la *Orden* de 22 de febrero de 2025.